IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEFFREY CHARLTON, as substitute | ) | |
| for Mary Charlton, deceased wage earner, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 3:10-CV-0056-O-BH |
| | ) | |
| MICHAEL ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| Defendant. | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order No. 3-251*, this case was automatically referred for proposed findings of fact and recommendation for disposition. Before the Court are *Plaintiff's Motion for Summary Judgment* (doc. 19), filed May 17, 2010, and *Defendant's Motion for Summary Judgment* (doc. 20), filed June 9, 2010. Based on the relevant filings, evidence, and applicable law, the Court recommends that *Plaintiff's Motion for Summary Judgment* be **GRANTED** in part, the *Defendant's Motion for Summary Judgment* be **DENIED**, and the case be remanded to the Commissioner for further proceedings.

**I. BACKGROUND**[1]

**A. Procedural History**

Jeffrey Charlton ("Plaintiff"), on behalf of his deceased wife Mary Charlton ("Claimant"), seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claims for disability and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423(d)(1)(A), 1382. On March 10, 2006, Claimant applied for benefits. (Tr. at 76-83, 88-92.) She claimed she had been disabled since September 24, 2005,

---

[1] The background information comes from the transcript of the administrative proceedings, which is designated as "Tr."

due to attention deficit hyperactivity disorder ("ADHD"), diabetes, chronic depression, and pancreatitis. (Tr. at 111.) The Social Security Administration denied her application initially and upon reconsideration. (Tr. at 37, 46.) A hearing before an Administrative Law Judge ("ALJ") was held on May 20, 2008. (Tr. at 17-33.) In a written decision, the ALJ found Claimant not disabled. (*See* Tr. at 10-16.) The Appeals Council accepted new evidence not presented to the ALJ but found no reason to review the ALJ's decision and denied the request for review. (Tr. at 1, 4.) Consequently, the ALJ's decision is the final decision of the Commissioner. (*Id.* at 1.) Claimant appealed the Commissioner's decision to this Court pursuant to 42 U.S.C. § 405(g) on January 13, 2010.

**B. Factual History**

    **1. Age, Education, and Work Experience**

Claimant was born in August 1970, and had two years of college education. (*See* Tr. at 76, 116.) She worked as a Customer Service Advisor for the fifteen years before her alleged onset of disability. (Tr. at 111-12.)

    **2. Medical Evidence**

Joseph Lambert, M.D., of North Hills Family Medicine treated Claimant from June 2003 through February 2007 for various ailments, including diverticulitis, pancreatitis, obesity, anxiety, diabetes mellitus, and low back and abdomen pain. (Tr. at 164-220, 256-94, 524-36.) In June 2003, her diabetes was very poorly controlled. (Tr. at 219.) A November 2003 record shows that she was hospitalized for pancreatitis and diabetic ketoacidosis. (Tr. at 213.) Between June 2003 and June 2004, her weight increased from 228 to 276 pounds. (Tr. at 199, 219.) In February 2005, she went to the emergency room for a swollen colon and abdominal and chest pain. (Tr. at 180.) In April 2005, she had an umbilical hernia and weighed 305 pounds. (Tr. at 172.) The next month, it was

2

noted that she had uncontrolled Type II diabetes and was morbidly overweight at 314 pounds. (Tr. at 161-62.) Between June 2005 and January 2007, her weight dropped from 312 pounds to 256.6 pounds. (*See* Tr. at 164, 169, 257, 262.)

Sandip Mehta, D.O., treated Claimant from May through August 2005 for obesity, diabetes, and hypertension. (Tr. at 157-62.) On May 6, 2005, Claimant weighed 314 pounds and had a body mass index of 61.3. (Tr. at 161.) The doctor noted that Claimant had a depressed affect on July 5, 2005. (Tr. at 160.) In May 2006, Dr. Mehta reported that she was not treating Claimant for any mental condition. (Tr. at 155.)

In July 2006, Claimant was examined by a State examining psychologist, Candace L. Hargett, Ph.D. (Tr. at 224-30.) Dr. Hargett diagnosed Bipolar II Disorder with a potential panic disorder with agoraphobia and ADHD that might be ruled out with further testing. (Tr. at 229.) In a Psychiatric Review Technique form dated August 14, 2006, Leela Reddy, M.D., found no severe mental impairment despite Claimant's bipolar disorder. (Tr. at 231, 234.) According to Dr. Reddy, the impairment caused no more than mild limitations for Claimant. (Tr. at 241.) Kavitha Reddy, M.D., reviewed pertinent records and found no severe medical impairment although she recognized that Claimant suffered from diabetes, hypertension, and obesity. (Tr. at 245.)

In November and December 2006, Claimant visited Martin B. Fisher, M.D., for psychiatric evaluation. (Tr. at 247-53.) Dr. Fisher treated her for major depression and sought to rule out bipolar disorder. (Tr. at 252.) Claimant reported hypersomnia with insomnia, being a "food addict", and grieving due to her mother's recent death. (Tr. at 248, 250.) She was diagnosed with bipolar disorder ("BD") and attention deficit disorder ("ADD"). (Tr. at 248.) Claimant received medication and treatment from Dr. Fisher for her BD between May 2007 and April 2008. (*See* Tr. at 770-76.)

Claimant was admitted to the hospital several times between June 2006 and January 2007. (*See* Tr. at 295-488.) In June 2006, she was admitted for two days for uncontrolled diabetes, abdominal pain, obesity, anxiety disorder, depression, and extremely poor compliance. (Tr. at 296-99.) Two months later, she had a two-day hospitalization for her diabetes and abdominal pain. (Tr. at 300-10.) In October 2006, she had surgery for bilateral groin abscesses, a colonoscopy, and an esophagogastroduodenoscopy. (Tr. at 311-25.) In November and December 2006, she had three multiple-day admissions for pain management and surgery related to abscesses and abdominal pain. (Tr. at 326-52.) In January 2007, she was admitted for uncontrolled diabetes and associated abdominal pain. (Tr. at 353-58.)

Between September and December 2007, she went to the emergency room at Baylor Hospital seven times for abdominal or flank pain. (Tr. at 626-27, 652-53, 672-73, 693-94, 713-14, 739-40, 764.) In late January and early February 2008, she was hospitalized for type 2 diabetes, diabetic ketoacidosis, and an infected abdominal mesh. (Tr. at 539-40.)

### 3. Hearing Testimony

Claimant and a vocational expert ("VE") testified at a hearing before the ALJ on May 20, 2008. (Tr. at 17-18.) Claimant was represented by an attorney. (*See* Tr. at 17.)

#### a. Claimant's Testimony

Claimant testified that she dropped out of college due to frequent hospital visits caused by her diabetes and pancreatitis. (Tr. at 21.) She last worked in September 2005. (*Id.* at 21-22.) She stated that when depressed, she might stay in bed for two to five days. (Tr. at 22-23.) On her better days, she would get out of bed at 9:00 a.m., eat, read, watch television, and pick up her children's clothes. (Tr. at 23.) She tired easily and had problems focusing, but something interesting could

maintain her attention for thirty to sixty minutes. (Tr. at 23-24.) Abdominal pain precluded sweeping, vacuuming, and mopping. (Tr. at 24.) She could only stand for ten minutes and walk about a block due to abdominal and back pain. (Tr. at 24-25.) Sitting a long time caused back pain, but she could usually sit for up to thirty minutes. (Tr. at 27.) The most she could lift was two pounds. (Tr. at 25.) She was unable to "handle any kind of stress", and anxiety over crowds caused her blood pressure to rise and made her irritable. (Tr. at 26.) She would lie down for twenty to thirty minutes to alleviate back pain. (Tr. at 27-28.)

At her prior job, Claimant had difficulties "taking criticism" and focusing on tasks. (Tr. at 25.) She had to take frequent breaks – two or three more than allowed by her employer. (Tr. at 25-26.) She would become irritated with customers and confused by non-standard questions. (Tr. at 26.) Frequent hospital visits – once or twice a month – made it difficult to maintain employment. (*Id.*)

### b. *Vocational Expert's Testimony*

The VE testified that a hypothetical individual of the claimant's age and educational and work background who could perform a full range of medium work except for positions involving complex instructions would be able to perform Claimant's past relevant work as customer service advisor. (Tr. at 30.) The hypothetical person could perform that past relevant work even if the person was limited to a full range of light work with the same limitation on complex instructions. (Tr. at 30-31.)

## C. ALJ's Findings

The ALJ denied Claimant's application for benefits by written opinion issued on February 13, 2009. (Tr. at 10-16.) He found that Claimant had not engaged in substantial gainful activity

5

since September 24, 2005, the alleged date of onset of disability. (Tr. at 12.) He next reviewed the medical record submitted to him, and he found that Claimant had six impairments (diabetes, high blood pressure, chronic depression, bipolar disorder, pancreatitis, and obesity) which were severe in combination. (Tr. at 13.) Despite the severe combination of impairments, he found no impairment or combination of impairments that satisfied the criteria of any impairment listed in the social security regulations. (*Id.*)

In determining Claimant's residual functional capacity ("RFC"), the ALJ recognized that her "medically determinable impairments could reasonably be expected to cause some of her reported symptoms", but he found her "only minimally credible" with respect to the "intensity, persistence, and limiting effects" of her symptoms. (Tr. at 14-15.) Regarding her "main problem", diabetes mellitus, he found that she was extremely poor in complying with medical instructions. (Tr. at 15.) After considering all symptoms to the extent reasonably consistent with the objective medical evidence, the ALJ concluded that Claimant retained the RFC to perform the full range of medium work except for jobs involving complex instructions. (Tr. at 14-15.) He accorded significant weight to the opinions of the agency medical consultants, Dr. Leela Reddy and Dr. Kavitha Reddy, because he found them well-supported and consistent with other medical evidence. (Tr. at 15.) Based on that RFC determination, the ALJ concluded that the claimant retained the ability to perform her past relevant work as a customer service advisor. (*Id.*)

## II. ANALYSIS

### A. Legal Standards

#### 1. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commis-

6

sioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id*. The Court may therefore rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id*. at 436 & n.1.

**2. Disability Determination**

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64. The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any

7

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). When a claimant's insured status has expired, the claimant "must not only prove" disability, but that the disability existed "prior to the expiration of [his or] her insured status." *Anthony*, 954 F.2d at 295. An "impairment which had its onset or became disabling after the special earnings test was last met cannot serve as the basis for a finding of disability." *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies

his or her burden under the first four steps, the burden shifts to the Commissioner at Step Five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). After the Commissioner fulfills this burden, the burden shifts back to the claimant to show that he cannot perform the alternate work. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### 3. Standard for Finding of Entitlement to Benefits

Plaintiff asks the Court to reverse the Commissioner's decision and find him entitled to benefits, and in the alternative, remand for further proceedings. (Pl. Br. at 25.)

When an ALJ's decision is not supported by substantial evidence, the case may be remanded "with the instruction to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits." *Armstrong v. Astrue*, No. 1:08-CV-045-C, 2009 WL 3029772, *10 (N.D. Tex. Sept. 22, 2009) (adopting recommendation of Mag. J.). The claimant must carry "the very high burden of establishing 'disability without any doubt.'" *Id.* at *11 (citation omitted). Inconsistencies and unresolved issues in the record preclude an immediate award of benefits. *Wells v. Barnhart*, 127 F. App'x 717, 718 (5th Cir. 2005). The Commissioner, not the court, resolves evidentiary conflicts. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

### B. Issues

Plaintiff presents the following issues for review:

> (1) the ALJ applied an improper legal standard to evaluate Claimant's severe impairments;
>
> (2) the ALJ improperly evaluated Claimant's obesity; and
>
> (3) substantial evidence does not support a finding that Claimant retained the ability to perform her past relevant work.

(Pl. Br. at 1.)

**C. <u>Issue One:  Severe Impairments</u>**

Plaintiff contends that the ALJ erred in not applying the correct standard for determining whether Claimant's impairments are severe at Step 2 of the evaluative process. (Pl. Br. at 12-15.)

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A literal application of these regulations is inconsistent with the Social Security Act because the definition includes fewer conditions than indicated by the statute. *See Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985). Accordingly, in the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Id*. at 1101. Additionally, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Id.* at 1104.

To ensure that the regulatory standard for severity does not limit a claimant's rights, the Fifth Circuit held in *Stone* that it would assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." *Id.* at 1106; *accord Loza v. Apfel*, 219 F.3d 378, 393 (5th

Cir. 2000). Notwithstanding this presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Unless the correct standard of severity is used, the claim must be remanded to the Commissioner for reconsideration. *Stone*, 752 F.2d at 1106.

When setting out the applicable law in his opinion, the ALJ stated that an "impairment or combination of impairments is 'severe' within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities." (Tr. at 11.) This is the standard set forth in 20 C.F.R. §§ 404.1520(c) and 416.920(c) that *Stone* found to be inconsistent with the Social Security Act. *See* 752 F.2d at 1104-05. The ALJ also stated that "an impairment or combination of impairments is not 'severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. (Tr. at 11 (citing *Stone*, the regulations, and Social Security Rulings (SSR) 85-28, 96-3p, and 96-4p).) Under *Stone*, however, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." 752 F.2d at 1101. Unlike the standard set out by the ALJ, *Stone* provides no allowance for a minimal interference with claimant's ability to work.

The ALJ's findings and conclusions do not cite to *Stone* or provide any indication that he applied the correct severity standard. (Tr. at 13.) He cites to the regulations and concludes that the claimant has a severe combination of impairments without any discussion of the effects that her impairments would have on her ability to work. (*Id.*) His Step 2 analysis consists entirely of a brief review of psychological and medical evidence. (*Id.*) Although the ALJ referenced *Stone* in his decision, the Court must look beyond his "magic words" to determine whether he applied the Fifth

11

Circuit's construction of a severe impairment. *Hampton*, 785 F.2d at 1311. Because the ALJ's application of the regulations does not expressly state the *Stone* standard or another opinion of the same effect, and because the ALJ makes no express statement that he used the *Stone* definition of severity, he has failed to analyze the Claimant's "medically determinable impairments at step 2 in accordance with the standard articulated by the Fifth Circuit." *Neal v. Comm'r of Soc. Sec. Admin.*, No. 3:09-CV-522-N-BH, 2009 WL 3837500, at *6 (N.D. Tex. Sept. 11, 2009) (recommendation of Mag. J. citing *Stone*, 752 F.2d at 1106), *adopted by* 2009 WL 3856662 (N.D. Tex. Nov. 16, 2009); *accord Garcia v. Astrue*, No. 3:08-CV-1881-BD, 2010 WL 304241, at *3-4 (N.D. Tex. Jan. 26, 2010). "Although the ALJ's citation to *Stone* would be an indicator that he applied the correct standard of severity, his citation to an incorrect definition of severity and the absence of a detailed narrative discussion at Step 2 creates ambiguity." *See Neal v. Comm'r of Soc. Sec. Admin.*, No. 3:09-CV-522-N-BH, 2009 WL 3856662, at *1 (N.D. Tex. Nov. 16, 2009). This ambiguity must be resolved at the administrative level. *Id.* It also precludes an immediate award of benefits. *See Wells*, 127 F. App'x at 718.

The Commissioner contends that a remand for a Step 2 error is inappropriate unless the Claimant shows prejudice from the error. (Mem. Supp. Def.'s Mot. Summ. J. at 5-6.) *Stone* mandates, however, that "[u]nless the correct standard is used, the claim *must* be remanded . . . for reconsideration". 752 F.2d at 1106 (emphasis added). As found in *Neal,* ambiguities regarding whether the correct standard was used must be resolved at the administrative level. *See* 2009 WL 3856662, at *1.

Because remand is required for an error at Step 2, the Court does not consider Plaintiff's other issues for review.

12

## III. RECOMMENDATION

*Plaintiff's Motion for Summary Judgment* (doc. 19) should be **GRANTED** to the extent he seeks remand for further proceedings, the *Defendant's Motion for Summary Judgment* (doc. 20) should be **DENIED**, and the decision of the Commissioner should be **REVERSED** and the case **REMANDED** for further proceedings.

**SO RECOMMENDED**, on this 14th day of July, 2010.

                                              IRMA CARRILLO RAMIREZ
                                              UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                              IRMA CARRILLO RAMIREZ
                                              UNITED STATES MAGISTRATE JUDGE